In re the Marriage of Sally Jane Figge BARIL, Respondent,

v.

Kenneth John FIGGE, Appellant.

No. 50823.

Supreme Court of Minnesota.

May 8, 1981.

Lapp, Lazar, Laurie & Smith and Raymond M. Lazar, O. C. Adamson II, Minneapolis for appellant.

Sinclair & Pardee and Gordon I. Sinclair, St. Paul, for respondent.

## PER CURIAM.

Kenneth Figge appeals from an order of the Ramsey County District Court interpreting a stipulated provision of the parties' judgment and decree of marital dissolution to require Figge to pay postsecondary education expenses of their three children, including tuition and room and board. We affirm.

By the terms of the judgment and decree, custody of the three children was awarded to their mother, Sally Figge Baril. Both parties, represented by counsel, stipulated to the following provision:

> The Respondent agrees to pay to the Petitioner as support of the minor children of the parties the sum of Two Hundred ($200) Dollars per month per child, said support to continue until each child reaches eighteen (18) years of age or completes high school, whichever occurs later; upon the happening of either of these events, the child support paid to Petitioner for said child shall be reduced by One Hundred Fifty ($150) Dollars per month, but as continuing support, the Respondent shall pay the school costs incident to the continuing education of said child for so long as the child makes reasonable progress in an accredited post high school education program.

The eldest child, Barbara, graduated from high school in June 1978 and enrolled in the nursing school at Creighton University in Omaha, Nebraska, for the 1978–79 school year. The record reveals that she consulted both parents before enrollment; that her tuition and room and board expenses, totalling $4,220, were paid through efforts of Figge to secure a loan and to assist his daughter in obtaining a student loan; that Figge contributed to her miscellaneous expenses throughout the year; and that Barbara expended amounts from personal savings for additional expenses.

After the conclusion of that school year, Figge reviewed his financial situation and indicated to Baril that he would no longer be willing or able to bear the full cost of Barbara's educational expenses. The refusal prompted Baril's subsequent motion to the district court for an order compelling compliance by Figge with the judgment incorporating the stipulation relating to the payment of each child's "school costs."

Each party attempted to ascribe a different meaning to the undefined term; Figge argued that the phrase contemplated a limitation of expenses to those direct and reasonable tuition costs, while Baril contended that the broad term must be defined to include all tuition, room and board, transportation and living expenses incurred during each child's attendance at a school away from home. The district court's order in essence accepted Baril's interpretation but excluded from Figge's obligation clothing, transportation and entertainment expenses. Figge's motion to vacate that order and more restrictively define the phrase "school costs" was denied and this appeal followed.

The inquiry of this court is directed to the propriety of the district court's interpretation of the undefined phrase. Underlying the trial court's order was its consideration of the comprehensive stipulated plan for the distribution of property, reflective of both the parties' compromise to provide for the postdissolution care of the family and the relative financial situations of each.

Examined in the context of this comprehensive financial scheme, the meaning attributed to the postsecondary educational provision by the trial court is both reasonable and correct. While presumably Figge was dismayed by staggering educational costs perhaps not fully contemplated at the time of the dissolution, the language employed in the provision, together with the actions of the parties thereafter, indicate an intention that he bear the educational expenses to the extent directed by the trial court.

Figge participated greatly in Barbara's initial decision to attend Creighton University and consented to such enrollment. In our view such participation by Figge in the postsecondary educational decision is necessarily implied in the provision and is a prerequisite to the enforcement of the obligation. The burden upon Figge, of course, is that the participation be reasonable and that consent or acquiescence in the children's decisions be not unreasonably withheld.

Affirmed.